UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STEVEN LIU,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>FIDELITY NATIONAL TITLE COMPANY, et al.,<br><br>　　　　　Defendants. | Case No. 25-cv-03728-KAW<br><br>**ORDER REASSIGNING CASE TO A DISTRICT JUDGE; REPORT AND RECOMMENDATION TO DISMISS CASE WITH PREJUDICE AND DENY MOTION TO DISMISS AS MOOT**<br><br>Re: Dkt. No. 15 |

On April 29, 2025, Plaintiff Steven Liu filed this civil action and an application to proceed *in forma pauperis*. (Dkt. Nos. 1, 3.) On May 27, 2025, the Court granted Plaintiff's IFP application and screened Plaintiff's complaint pursuant to 28 U.S.C. § 1915. (Screening Order, Dkt. No. 7.) The Court found that Plaintiff's complaint was deficient and ordered Plaintiff to file an amended complaint that addressed the deficiencies.

On July 21, 2025, Plaintiff filed his amended complaint, alleging claims based on his ownership of 633-635 Olmstead Street (the "Subject Property"). (First Amend. Compl. ("FAC") ¶¶ 13, 15, Dkt. No. 15.) It appears, however, that Plaintiff also served his complaint on at least some Defendants. On August 11, 2025, Defendant Baymark Financial, Inc. ("Baymark") filed a motion to dismiss Plaintiff's requests for quiet title and declaratory relief. (Baymark Mot. to Dismiss, Dkt. No. 18.) Defendant Baymark further noted that contrary to Plaintiff's allegations that he is the sole owner of the Subject Property, Plaintiff is not and has never been the owner. (*Id.* at 3.) Defendant Baymark included a request for judicial notice. (Baymark Req. for Judicial Notice ("RJN"), Dkt. No. 18-1.)

Because there is a pending dispositive motion and the Court lacks consents from all named parties, the Court REASSIGNS this case to a district judge. The Court further RECOMMENDS

that the case be DISMISSED with prejudice because Plaintiff's complaint is frivolous under Section 1915, and amendment appears futile. Because the Court recommends dismissal of the case with prejudice, the Court further RECOMMENDS that Defendant Baymark's motion to dismiss be DENIED as moot.

## I.  LEGAL STANDARD

The *in forma pauperis* statute provides that the Court shall dismiss the case if at any time the Court determines that the allegation of poverty is untrue, or that the action (1) is frivolous or malicious, (2) fails to state a claim on which relief may be granted; or (3) seeks monetary relief against a defendant who is immune from such relief.  28 U.S.C. § 1915(e)(2).

A complaint is frivolous under Section 1915 where there is no subject matter jurisdiction. *See Castillo v. Marshall*, 207 F.3d 15, 15 (9th Cir. 1997) (citation omitted); *see also Pratt v. Sumner*, 807 F.2d 817, 819 (9th Cir. 19987) (recognizing the general proposition that a complaint should be dismissed as frivolous on Section 1915 review where subject matter jurisdiction is lacking).

A complaint may also be dismissed for failure to state a claim, because Section 1915(e)(2) parallels the language of Federal Rule of Civil Procedure 12(b)(6). *Lopez v. Smith*, 203 F.3d 1122, 1126-27 (9th Cir. 2000). The complaint, therefore, must allege facts that plausibly establish the defendant's liability. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-57 (2007). When the complaint has been filed by a pro se plaintiff, courts must "construe the pleadings liberally . . . to afford the petitioner the benefit of any doubt." *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010)(citations omitted). Upon dismissal, pro se plaintiffs proceeding *in forma pauperis* must be given leave to "amend their complaint unless it is absolutely clear that the deficiencies of the complaint could not be cured by amendment." *Franklin v. Murphy*, 745 F.2d 1221, 1235 n.9 (9th Cir. 1984) (internal citations and quotation marks omitted); *Lopez v. Smith*, 203 F.3d 1122, 1130-31 (9th Cir. 2000).

## II.  DISCUSSION

Plaintiff's allegations appear almost identical to his prior complaint.  Specifically, Plaintiff alleges that starting in January 1982, he resided at the Subject Property with his family members. (FAC ¶ 14.)  Ihe further alleges that in February 2013, he resided at the family member's share,

1  resulting in him having sole ownership over the Subject Property.  (FAC ¶ 15.)  In January 2018,
2  Defendants Mark Engelman and Baymark had Plaintiff sign a shortform deed of trust and
3  assignment of rents, recorded on January 31, 2018 at Doc. 2018-K573883-00.  (FAC ¶ 16.)  The
4  deed of trust references that Plaintiff's sister borrowed $800,000 using the Subject Property as
5  collateral.  (FAC ¶ 17.)  Plaintiff, however, alleges that the deed of trust does not specify the
6  interest charged on the loan, and that the interest was excessive and against public policy.  (FAC ¶
7  17.)
8     In March 2018, Defendant Baymark recorded tan assignment deed of trust, which named
9  multiple individuals and trustees of family trusts -- Defendants Michael Dutton, Cheryl Frank
10 Dutton, Melinda Frank, Suzie S. Thorn, Rhea Gong, Polycomp Trust Co., Tony Vertongen,
11 Howard L. Eisenberg, Michael Goldstein, Ira Services Trust Co., Vera Novosel, Forge Trust Co.,
12 Stephanie Lacarrubba, Provident Trust Group, and Forge Global Holdings, Inc. -- as lienholders.
13 (FAC ¶¶ 23-25.)  Plaintiff contends that this is illegal because the individuals are not licensed
14 lenders, and therefore they are loan sharks.  (FAC ¶¶ 24-25.)  Defendant Baymark also recorded a
15 substitution of trustee, which substituted Defendant Baymark as trustee in place of Defendant
16 Fidelity National Title Company.  (FAC ¶ 26.)
17     In August 2021, Defendant Baymark recorded another assignment of deed of trust, naming
18 various companies and individuals as beneficiaries.  (FAC ¶ 27.)  On September 21, 2022,
19 Defendant Golden West Foreclosure Service, Inc. recorded a notice of trustee's sale, stating that
20 the Subject Property would be sold at a public auction.  (FAC ¶ 28.)  Plaintiff, however, asserts
21 that Defendants failed to publicly advertise the auction to the public, and instead used a private
22 auction site that required a subscription or membership fee.  (FAC ¶ 29.)  On December 22, 2022,
23 Defendants held a private auction, after which Defendants Engelman and Baymark signed the
24 Subject Property to themselves.  (FAC ¶ 30.)  Defendant Baymark then signed and recorded a
25 Trustee's Deed Upon Sale, which "names all or most of the named co-defendants as beneficiaries
26 under the Deed Upon Sale."  (FAC ¶ 30.)
27     On February 7, 2023, Defendant Jak Marquez served a 3-day Notice to Quit on the Subject
28 Property.  (FAC ¶ 31.)  Plaintiff asserts the Notice to Quit was defective because it did not have a

date on it, and required that Plaintiff relinquish the Subject Property to Defendant Marquez, despite Defendant Marquez not having any claim to the Subject Property. (FAC ¶ 31.) Plaintiff states that he has made several demands for an accounting and letter verifying the amount owed, but Defendants have refused to provide this information. (FAC ¶ 35.) Thus, Plaintiff asserts that the sale of the Subject Property was fraud and void. (FAC ¶ 35.)

On November 22, 2024, Defendant Baymark "and all named co-defendants" allegedly conspired and participated in filing a fourth unlawful detainer action regarding the Subject Property. (FAC ¶ 103.) This action was against Plaintiff, whereas prior actions had been filed against Plaintiff's sister. (FAC ¶ 103.)

Based on this, Plaintiff brings claims against Defendants for: (1) violation of 15 U.S.C. § 1692f (Fair Debt Collection Practices Act ("FDCPA")), (2) fraud by intentional misrepresentation, (3) violation of 42 U.S.C. § 1983 (Civil Rights), (4) violation of 42 U.S.C. §1985(3) (conspiracy against civil rights), (5) violation of the RICO Act, (6) conspiracy to violate RICO, and (7) abuse of process.

The Court finds that Plaintiff again fails to state a claim. Indeed, many of these claims were previously raised in the initial complaint but suffer from the same deficiencies as before.

**A.    FDCPA Claim**

Plaintiff raises claims under the FDCPA, specifically § 1692f(1) and (6). Section 1692f(1) prohibits the collection of any amount "unless such amount is expressly authorized by the agreement creating the debt or permitted by law," while § 1692(f)(6) prohibits a debt collector from "[t]aking or threatening to take any nonjudicial action to effect dispossession or disablement of property if: (A) there is no present right to possession of the property claimed as collateral through an enforceable security interest; (B) there is no present intention to take possession of the property; or (C) the property is exempt by law from such dispossession or disablement."

As an initial matter, the Court observes that Plaintiff does not provide a "short and plain statement of the claim showing that the pleader is entitled to relief," as required by Rule 8 of the Federal Rules of Civil Procedure. Rather, Plaintiff appears to copy and paste most of his fact section into the first claim, thus making it unclear what specific actions Plaintiff is complaining of

4

and what is the basis for his claim.

On the substance, it is not apparent that Plaintiff has standing to bring the FDCPA claim. Again, Plaintiff alleges that he signed a deed of trust, which referenced that he (or his sister) borrowed $800,000 but that did not include the interest being charged. (FAC ¶¶ 42-43.) He further alleges that the interest amount was excessive. (FAC ¶ 44.) He then complains about the assignment of the deed of trust, the substitution of trustee, the sale of the Subject Property at a private auction, and the service of a notice to quit. (FAC ¶¶ 49, 52-57.) Finally, Plaintiff asserts that Defendants refused to provide him with an accounting or verification of the debt. (FAC ¶ 60.)

In short, Plaintiff is effectively complaining about actions related to a specific debt, which is memorialized by the January 26, 2018 deed of trust and assignment. The problem, however, is that there can be no dispute that the debt was incurred by Plaintiff's *sister*, and that the deed of trust and assignment that Plaintiff claims he signed was in fact signed by his sister. (*See* FAC ¶¶ 42-43.) Specifically, Defendant Baymark has provided the exact deed of trust and assignment (corresponding with the same date and document number alleged in the complaint) that Plaintiff claims he signed; it clearly shows that Plaintiff's sister, Sally L. Liu, was the trustor who transferred the Subject Property to Defendant Fidelity National Title Co. as the trustee and Defendant Baymark as the beneficiary. (RJN, Exh. H.[1]) This notarized deed of trust is signed by Ms. Liu. (*Id.* at 2-3.) The deed of trust further states that the deed of trust and assignment of rents is being signed for the purpose of securing a $800,000 loan, "executed by Trustor in favor of Beneficiary or order." (*Id.* at 1.) In short, Plaintiff's claims stem from a debt that he did not incur and concern a property interest that he does not own. Thus, there does not appear to be any standing, as the debt and Subject Property both belong not to Plaintiff, but Ms. Liu.

Thus, the Court recommends that the FDCPA claim be dismissed with prejudice.

---

[1] The Court may consider this deed of trust because Plaintiff not only refers to it in the complaint as the challenged debt at issue, but states that he intends to attach it to the complaint. (FAC ¶ 42.) Thus, the deed of trust may be incorporated by reference. *See Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1002 (9th Cir. 2018) ("a defendant may seek to incorporate a document into the complaint if the plaintiff refers extensively to the document or the document forms the basis of the plaintiff's complaint").

### B.     Fraud by Intentional Misrepresentation

The Court previously found that Plaintiff's fraudulent misrepresentation claim failed to satisfy the heightened pleading standard under Federal Rule of Civil Procedure 9(b). (Screening Order at 4 (citing *ESG Capital Partners, LP v. Stratos*, 828 F.3d 1023, 1031-32 (9th Cir. 2016) ("A plaintiff alleging fraud must overcome a heightened pleading standard under Rule 9(b).")).) Thus, Plaintiff must allege "the who, what, when, where, and how" of the misconduct charged. *Vess v. Ciba-Geigy Corp. v. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003).

As before, Plaintiff copies and pastes most of his fact section into this cause of action, making it unclear upon which statements Plaintiff relies. (*See* FAC ¶¶ 71-93.) Much of the substance appears to be identical to the initial complaint as well. (*Compare with* Compl. ¶¶ 71-93.) The only substantive change the Court can discern is that Plaintiff asserts that he "justifiably relied upon the Plaintiff's [sic] representations that they are licensed to loan money and would be honest and forthright about the amount owed." (FAC ¶ 75.) This statement is insufficient to satisfy Rule 9(b); it fails to identify who made the statement, when and where the statement was made, and how it was made. Further, the Court again notes that it was Plaintiff's sister who took out the loan. Thus, it is unclear how *Plaintiff* relied upon these statements when he did not enter into the loan agreement at issue.

Given that Plaintiff appears to have made only a single change to this cause of action, which identifies a statement that concerned the loan that Plaintiff did not enter into, the Court recommends that the fraudulent misrepresentation claim be dismissed with prejudice.

### C.     Section 1983 Claim

The Court previously found that Plaintiff's § 1983 civil rights claim fails to plead the essential elements for this claim. (Screening Order at 4.) "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States and must show that the alleged deprivation was committed by a party acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988).

Unlike the initial complaint, Plaintiff now identifies the specific constitutional right at issue, namely a due process violation under the Fourteenth Amendment. (FAC ¶ 100.) Like the

6

1   initial complaint, however, Plaintiff still fails to demonstrate that Defendants are acting under
2   color of state law. Instead, Plaintiff asserts that Defendants are state actors because they are
3   "using" a government agency or entity -- specifically, by filing their unlawful detainer actions in
4   state court. (FAC ¶¶ 100-101.) Filing a lawsuit in a state court does not transform Defendants
5   into state actors. Indeed, courts have been clear that a defendant's "pursuit of an unlawful detainer
6   action in state court cannot form the basis of a constitutional violation pursuant to 42 U.S.C. §
7   1983 because no state action is implicated by [the defendant's] conduct." *Neher v. Davis*, No.
8   2:25-cv-00482-DC-CSK, 2025 U.S. Dist. LEXIS 97083, at *7 (E.D. Cal. May 20, 2025); *Ohno v.*
9   *Yasuma*, 723 F.3d 984, 996 (9th Cir. 2013) (explaining that a party's use of a court does not make
10  them a state actor because "[a]lthough the court assuredly performs a public purpose, a private
11  individual seeking a remedy from a court is seeking gain for him or herself, a purely private act").

Because Plaintiff cannot demonstrate that Defendants were acting under color of state law, the Court recommends that Plaintiff's § 1983 claim be dismissed with prejudice.

### D. Section 1985(3) Claim

The Court previously found that Plaintiff's § 1985(3) conspiracy claim fails to allege any specific facts demonstrating discriminatory bias. (Screening Order at 5.) To allege a § 1985(3) claim, Plaintiff must allege an "intent to deprive of *equal* protection, or *equal* privileges and immunities, meaning that there must be some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' actions. The conspiracy, in other words, must aim at a deprivation of the equal enjoyment of rights secured by the law to all." *Griffin v. Breckenridge*, 403 U.S. 88, 102 (1971).

Plaintiff does not allege any new facts that would demonstrate discriminatory bias. Rather, Plaintiff relies on the same conclusory statement that the Court previously found insufficient, namely: "The conspiracy was driven by a discriminatory bias against Plaintiff on the basis of his race or religious beliefs." (FAC ¶ 119.)

Because Plaintiff has not alleged any additional facts to demonstrate discriminatory bias, the Court recommends that Plaintiff's § 1985 claim be dismissed with prejudice.

7

### E. RICO

The Court previously found Plaintiff's RICO claims failed to allege plausible claims. (Screening Order at 5.) As with the initial complaint, Plaintiff's RICO claims appear to be based on the filing of unlawful detainer actions against him and his sister. (FAC ¶¶ 129.)

To state a claim under RICO, a plaintiff must allege "(1) conduct, (2) of an enterprise, (3) through a pattern, (4) of racketeering activity." *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 (1985). With respect to an enterprise, the Court explained that Plaintiff failed to allege specific facts of an enterprise to establish the existence of an enterprise, the nature of the enterprise, or the roles of each Defendant in that enterprise. Rather, Plaintiff had simply alleged that Defendants acted together. (Screening Order at 5.) Plaintiff now appears to allege that Defendant Engleman owns a 30% interest in Defendant Baymark, and that he directed them to recruit unsuspecting investors. (FAC ¶ 125.) Plaintiff, however, fails to explain the role of any of the other Defendants.

Further, racketeering activity is defined as "any act chargeable under several generically described state criminal laws, any act indictable under numerous specific federal criminal provisions, including mail and wire fraud, and any offense involving bankruptcy or securities fraud or drug-related activities that is punishable under federal law." *Sedima, S.P.R.L.*, 473 U.S. at 481-82. Here, Plaintiff has not identified activity that would satisfy this definition. The Court is unclear how the filing of duplicate unlawful detainers would be a crime punishable under any criminal law. *See Vachon v. Reverse Mortg. Sols., Inc.*, No. EDCV 16-02419-DMG (KES), 2017 U.S. Dist. LEXIS 212818, at *16 (C.D. Cal. Aug. 11, 2017) (dismissing RICO claim based on Defendants' participation in an unlawful detainer action to enforce "fraudulent" loan contracts as "patently frivolous").

The Court thus recommends that Plaintiffs' RICO claims be dismissed with prejudice because Plaintiff again fails to adequately identify an enterprise or racketeering activity.

### F. Abuse of Process

Finally, Plaintiff brings a new claim for "abuse of process." (FAC ¶¶ 151-160.) "The common law tort of abuse of process arises when one uses the court's process for a purpose other

8

than that for which the process was designed." *S.A. v. Maiden*, 229 Cal. App. 4th 27, 41 (2014). "To succeed in an action for abuse of process, a litigant must establish that the defendant (1) contemplated an ulterior motive in using the process, and (2) committed a willful act in the use of the process not proper in the regular conduct of the proceedings." *Id.* "[M]erely filing suit with an improper purpose is insufficient; the defendant must have used legal process in an improper way." *Rucker v. Wells Fargo Bank, N.A.*, No. LA CV10-09008 JAK (JEMx), 2012 U.S. Dist. LEXIS 62979, at *12 (C.D. Cal. Jan. 13, 2012).

Plaintiff argues that the filing of multiple unlawful detainers against himself and his sister constitute an abuse of process. Again, it is not apparent that the filing of unlawful detainer actions can support such a claim. Courts have found that because statements in an unlawful detainer action are privileged, "such statements cannot form the basis for an abuse of process claim." *Rucker*, 2012 U.S. Dist. LEXIS 62979, at *13 (citing *Rusheen v. Cohen*, 37 Cal. 4th 1048, 1058 (2006)). Further, even if the Court found that the filing of multiple unlawful detainers against Plaintiff could be an abuse of process, Plaintiff has not pled that there have been multiple unlawful detainers against himself. Rather, he points to unlawful detainer actions that were filed against his *sister*. (FAC ¶¶ 154, 156.) It is not apparent that the filing of the unlawful detainer against Plaintiff's sister precluded Defendants from filing unlawful detainers against *Plaintiff*, who is a separate person who would not be bound by a judgment against his sister.

Accordingly, the Court recommends that Plaintiff's abuse of process claim be dismissed with prejudice.

### III.   CONCLUSION

For the reasons set forth above, the allegations in Plaintiff's complaint are insufficient under 28 U.S.C. § 1915(e)(2). Given that Plaintiff has failed to correct the deficiencies identified in the screening order, and that many of these deficiencies are incapable of being corrected, the Court RECOMMENDS that Plaintiff's case be DISMISSED with prejudice. The Court further RECOMMENDS that Defendant Baymark's motion to dismiss be DENIED as moot.

Any party may file objections to this report and recommendation with the district judge within 14 days of being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b);

1  N.D. Civil L.R. 72-3.  The parties are advised that failure to file objections within the specified

2  time may waive the right to appeal the district court's order.  *IBEW Local 595 Trust Funds v. ACS*

3  *Control Corp.*, No. C-10-5568, 2011 WL 1496056, at *3 (N.D. Cal. Apr. 20, 2011).

4      IT IS SO RECOMMENDED.

5  Dated: September 18, 2025

                                                    KANDIS A. WESTMORE
                                                    United States Magistrate Judge